JUSTICE TRIEWEILER
delivered the Opinion of the Court.
¶1 The Plaintiff, Reff-Conlin’s Inc., brought this action in the District Court for the Thirteenth Judicial District in Yellowstone County to recover compensation for losses caused when the Red River flooded Conlin’s Grand Forks, North Dakota, furniture store. Named as defendants were its insurer, Fireman’s Fund Insurance Company, and its insurance agent, Western States Insurance Company. Conlin’s settled with Fireman’s Fund but proceeded to trial against Western States. The jury found that Western States negligently procured flood insurance for the Grand Forks store and negligently misrepresented its efforts to obtain the insurance and is 100% liable for Conlin’s damages. Following a post-trial hearing to determine damages, the District Court entered judgment in favor of Conlin’s. Western States appeals from the judgment of the District Court and Conlin’s cross-appeals. We reverse the District Court and remand for a new trial.
¶2 Although numerous issues are raised on appeal and cross-appeal, our resolution of the following issue requires a new trial and therefore we decline to address additional issues:
¶3 Did the District Court err when it denied Western’s challenge for cause of potential juror Derrig?
FACTUAL AND PROCEDURAL BACKGROUND
¶4 On April 19, 1997, the Red River flooded Reff-Conlin’s Inc.’s furniture store in Grand Forks, North Dakota. At the time of the flood, Conlin’s was insured by the Defendant Fireman’s Fund, Inc., through its agent, Defendant Western States, Inc., an independent insurance agency with fourteen offices across Montana.
¶5 Conlin’s filed a complaint in the District Court for the Thirteenth Judicial District in Yellowstone County on August 19, 1997. Conlin’s *144 alleged that it asked Western to add flood insurance to the Grand Forks store’s existing policy in March 1997. However, Fireman’s failed to inform Western that no flood insurance would be offered until April 18, 1997, the day before the dikes protecting Grand Forks broke.
¶6 Conlin’s claimed: (1) that Fireman’s breached its contract to insure the store; (2) that Fireman’s and Western committed constructive fraud and negligent misrepresentation in handling Conlin’s flood insurance request; (3) that Fireman’s negligently handled Conlin’s request for flood insurance; (4) that Fireman’s and Western breached the implied covenant of good faith and fair dealing; (5) that Fireman’s conduct in handling Conlin’s insurance claim violated the Unfair Claims Settlement Practices Act; (6) that Western negligently handled Conlin’s request for flood insurance; and (7) that the conduct of the Defendants amounted to actual fraud and malice which entitled Conlin’s to punitive damages.
¶7 In an Amended Complaint filed September 8, 1998, Conlin’s further alleged that Fireman’s made representations about coverage upon which Conlin’s relied and that Fireman’s should therefore be estopped from relying on a policy exclusion for damage caused by flood. Finally, Conlin’s contended that Western breached its contract with Conlin’s.
¶8 The essence of Conlin’s argument at the District Court was that an existing Fireman’s policy covered $329,000 of its $665,000 loss. Moreover, Conlin’s alleged that Fireman’s was negligent for failing to inform either Western or Conlin’s of its decision not to offer flood insurance until it was too late for Conlin’s to look elsewhere. Conlin’s alleged that Western was negligent for failing to procure flood insurance and negligently misrepresented that flood insurance would be acquired for the Grand Forks store.
¶9 Conlin’s and Fireman’s reached a confidential settlement agreement, and the District Court filed a May 10, 1999, order which dismissed Fireman’s with prejudice as a defendant. A general release of all Conlin’s claims against Fireman’s was subsequently filed on September 3, 1999. However, Conlin’s proceeded to trial against Western, which made a claim for contribution against Fireman’s.
¶10 On January 21, 1999, Western filed a motion for summary judgment. Western argued that Conlin’s had never specifically requested that Western procure flood insurance for the Grand Forks store. Western further argued that it had no duty to procure flood insurance pursuant to its contract with Conlin’s.
¶11 The District Court granted Western’s summary judgment motion on the breach of contract and constructive fraud claims, concluding *145 that Western had no contractual obligation to provide flood insurance. However, the District Court concluded that issues of material fact precluded summary judgment on the breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and negligence claims. Conlin’s proceeded to trial against Western on these remaining claims.
¶ 12 During voir dire prospective juror Martin Derrig disclosed that he was president of US Bank, which, at the time of trial, was represented by Conlin’s trial counsel; that he had in the past worked with that firm as bank president; and that U.S. Bank was one of Conlin’s creditors.
¶13 Western challenged Derrig for cause twice during voir dire. The District Court denied both challenges. Western then used one of its peremptory challenges to remove Derrig from the jury panel. Western used all of its peremptory challenges during jury selection.
¶14 Following a seven day trial, the jury found that Western was negligent in the procurement of flood insurance for the Grand Forks store and that Western negligently misrepresented its efforts to obtain the insurance. The jury attributed 100% of the liability to Western.
¶15 After a post-trial hearing on damages, the District Court offset $146,849, added interest, and entered judgment in favor of Conlin’s for $615,030. Western now appeals from that judgment and Conlin’s cross-appeals. We reverse and remand for a new trial.
STANDARD OF REVIEW
¶16 We will review a district court’s refusal to grant a challenge for cause for an abuse of discretion[1].
DISCUSSION
¶17 Did the District Court err when it denied Western’s challenge for cause of potential juror Derrig?
¶18 Western contends that the District Court erroneously denied its challenge for cause to prospective juror Derrig. Because Western was forced to use a peremptory challenge to prevent Derrig from serving, and because Western used all of its peremptory challenges, Western now maintains that it was correspondingly denied an equal number of *146 peremptory challenges and is therefore entitled to a new trial.
¶19 At trial, Western asserted two bases for challenging Derrig for cause. Western challenged Derrig based on the debtor-creditor relationship between Conlin’s and US Bank and Western challenged Derrig due to the potential for bias arising from his attorney-client relationship with Conlin’s trial attorneys. Each of these challenges for cause was denied and Western was forced to use a peremptory challenge to exclude Derrig from the jury.
1. Debtor - Creditor Relationship
¶20 Derrig revealed during voir dire that US Bank provided financing for Conlin’s. The District Court denied Western’s challenge for cause based on US Bank’s creditor relationship with Conlin’s. Western now maintains that as president of US Bank, Derrig had a professional interest in Conlin’s recovery of it flood losses and, therefore, its challenge should have been granted. Conlin’s contends that Derrig is merely an employee of a creditor and that the District Court considered the relevant facts and properly concluded that Derrig could be impartial.
¶21 Section 25-7-223(3), MCA, provides that “[cjhallenges for cause may be taken” on the grounds that a debtor-creditor relationship exists between the juror and either party. We conclude that there is no substantive difference between the Chief Executive Officer of a creditor who is responsible for the creditor’s success and the creditor itself when it comes to impartiality and jury duty. To hold otherwise would exalt form over substance. Therefore, we conclude that the District Court abused its discretion when it denied Western’s challenge to Derrig based on the debtor-creditor relationship of Conlin’s and US Bank.
2. Attorney-Client Relationship
¶22 Derrig also stated during voir dire that US Bank was represented by the attorneys for Conlin’s and that he had worked with attorneys from that firm. Derrig revealed that as president, he was one of two people who made decisions with regard to which firm the bank would use. When questioned, however, Derrig said that he could be fair and impartial despite his professional relationship with Conlin’s trial attorneys.
¶23 Western contends that Derrig should have been removed for cause because of US Bank’s relationship with Conlin’s trial counsel. Conlin’s counters that there was no attorney-client relationship between its attorneys and Derrig. Rather, any professional relationship was between the attorneys and US Bank. Western replies that any distinction between personal and corporate representation is eroded *147 where the potential juror is an officer, director, or shareholder of the corporation and notes that as president of US Bank, Derrig had a professional interest in his relationship with opposing counsel.
¶24 Section 25-7-223, MCA, lists the grounds for challenge to jurors for cause in civil actions. Although the statute does not specifically address a current attorney-client relationship, Western suggests that such a relationship might be covered by subparagraph (5), which permits challenges for cause when the prospective juror has an interest in “the event of the action,” or by subparagraph (7), which permits challenges on the basis of “the existence of a state of mind ... evincing enmity against or bias in favor of either party.” See §§ 25-7-223 (5), (7), MCA.
¶25 We have not previously addressed the issue of whether a district court abuses its discretion by refusing a challenge for cause based on a current relationship between an attorney representing one of the parties and a prospective juror. We have, however, had occasion to discuss the propriety of denying a challenge for cause based on an attorney’s past relationship with a prospective juror. In Williams v. Rigler (1988), 234 Mont. 161, 761 P.2d 833, two jurors considered defense counsel to be their attorney, but neither had any business pending with the attorney at the time of trial. When asked by the judge, one of the jurors answered that her past relationship would not affect her ability to act as a juror. We upheld the District Court’s denial of plaintiffs challenge for cause, stating: “Because the District Court confirmed that no present business was pending between either of the jurors and defense counsel, we find no abuse of discretion by the District Court in refusing Williams’ challenges for cause.” Williams, 234 Mont. at 164, 761 P.2d at 835.
¶26 Unlike the juror in Williams, Derrig had an ongoing relationship with Conlin’s attorneys. Moreover, Derrig was one of the people at US Bank responsible for hiring Conlin’s attorneys, which strongly suggests that he had a favorable opinion of their work. An ongoing attorney-client relationship between a prospective juror and trial counsel presents the strong possibility of bias in favor of the party represented by those attorneys.
¶27 We conclude that the District Court should have granted Western’s challenge for cause pursuant to § 25-7-223(7), MCA. Accordingly, we hold that the District Court erred when it denied Western’s challenge for cause on the basis of an attorney-client relationship.
¶28 Prior decisions of this Court have established the principle that when a district court erroneously denies a challenge for cause, we *148 presume that one party was prejudiced and is therefore entitled to a new trial. We explained the rationale for presuming prejudice as a matter of law in State v. Williams (1993), 262 Mont. 530, 866 P.2d 1099, rev’d in part on other grounds, State v. Good, 2002 MT 59, 309 Mont. 113, 43 P.3d 948, a criminal case where we looked at the advantage created for one party when the other party had to use a peremptory challenge to remove even one juror who should have been removed by the District Court for cause. We held that:
When jurors who should have been removed for cause are not removed and must, therefore, be removed by peremptory challenge, the party whose challenge for cause was wrongfully denied effectively loses one of the peremptory challenges provided for by law. In other words, the effect of the district court’s abuse of discretion in this case was to reduce defendant’s number of peremptory challenges to five, rather than six.
Williams, 262 Mont. at 537, 866 P.2d at 1103.
¶29 When one party receives more peremptory challenges than an opponent, that party has a tactical advantage that is unmistakable, but nearly impossible to prove. See King v. Special Resource Management, Inc., (1993), 256 Mont. 367, 371-74, 846 P.2d 1040-42. In these circumstances “prejudice is presumed as a matter of law .’’King, 256 Mont. at 374, 846 P.2d at 1042.
¶30 In King, the plaintiff sued the Montana Power Company and two subsidiaries for wrongful discharge from employment. The defendants were each given eight peremptory challenges to the jury compared to King’s four. This Court concluded that defendants had not demonstrated sufficient hostility to justify additional peremptory challenges. More importantly, however, the Court recognized the beneficial effect of extra peremptory challenges and explained why, when they are received, prejudice must be presumed whether or not it can be demonstrated. We noted that up until that time Leary v. Kelly Pipe Co. (1976), 169 Mont. 511, 549 P.2d 813, required that a party claiming prejudice based on extra peremptory challenges was required to prove that he or she had in fact been prejudiced. We then outlined the difficulty of meeting this requirement:
The Leary test requires adversely affected parties to show that they were actually prejudiced by a grant of additional peremptory challenges to the opposing party. This places an almost impossible burden on the objecting party. Moreover, when we focus on review on the actual conduct of a juror, we ignore the correctness of the trial court’s decision and that decision becomes virtually unreviewable. Hunsaker, 588 P.2d at 499. As noted by Justice *149 Shea in that opinion, “our attention is focused on the conduct of the jury, which in most cases we are in no position to determine.” It is the policy of the law to look with disfavor on any attempt to invade the jury’s internal decision making processes in order to impeach verdicts, except in rare circumstances. In Kentucky Farm Bureau, the court stated:
It may be that peremptory challenges should be abolished in civil cases and only challenges for cause allowed. We are informed that this is the present English practice. As long as they are retained as part of the trial process, however, we believe that their proper allocation between litigants is a substantial right which so pervades the process that its erroneous application requires reversal as a matter of law if the issue is properly preserved by the adversely affected litigant, (citations omitted).
If we require a showing of prejudice as in Leary, we cannot evaluate the effect of an improper grant of peremptory challenges without invading the internal processes of a jury. We also should not disregard the advantages bestowed upon one side by having additional peremptory challenges granted to them. We previously modified Leary to the extent that prejudice need not be demonstrated when a trial court follows the guidelines set forth in Hunsaker. See Williams, 761 P.12d 833. We now expressly overrule Leary v. Kelly Pipe Co. to the extent it requires a showing of prejudice to reverse a jury verdict for an incorrect grant of peremptory challenges to one side.
King, 256 Mont. at 373-74, 846 P.2d at 1042.
¶31 We have recently followed the rule announced in King and reinforced its rationale in Bueling v. Swift, 1998 MT 112, 288 Mont. 472, 958 P.2d 694, and in Armstrong v. Gondeiro, 2000 MT 326, 303 Mont. 37, 15 P.3d 386. Therefore, Williams stands for the principle that when a district court erroneously denies a challenge for cause, it is the substantive equivalent of granting one side more peremptory challenges than the other which, as we held in King, is prejudicial as a matter of law. Because an erroneous ruling on a challenge for cause is presumed prejudicial as a matter of law, we reverse the District Court and remand for a new trial.
CHIEF JUSTICE GRAY, JUSTICES REGNIER, LEAPHART and NELSON concur.

 In the past, the standard of review of a denial of a challenge to a juror for cause in civil cases has been “clearly erroneous” while “abuse of discretion” has been used in criminal cases. See Walden v. State (1991), 250 Mont. 132, 141-42, 818 P.2d 1190, 1196. However, the clearly erroneous standard is more appropriately applied to findings of fact. See Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. Rulings on challenges for cause more typically invoke the District Court’s discretion.